IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LINDA CASAZZA,                          No   C 07-2859 VRW

     Plaintiff,                        ORDER

     v

MICHAEL J ASTRUE, Commissioner of
Social Security,

     Defendant.
_____/

     Plaintiff Linda Casazza seeks judicial review of the Social Security Administration's (SSA's) final decision denying her application for disability insurance benefits (DIB) under 42 USC § 405(g). Doc #1 at 1-3. Plaintiff moves for summary judgment seeking a remand to the SSA to cure an alleged defect in the decision rendered by the administrative law judge (ALJ). Doc #21 at 3. Specifically, plaintiff contends that the ALJ improperly failed to include in his hypothetical question to the vocational expert (VE) a limitation in plaintiff's ability to withstand "the stress of a routine work day." Id at 4. Defendant cross-moves for summary judgment to affirm the final decision. Doc #22 at 1.

For the following reasons, plaintiff's motion for summary judgment and remand is DENIED and defendant's cross-motion for summary judgment is GRANTED.

I

Although plaintiff claimed to be disabled by both physical and mental impairments, her appeal turns on the ALJ's handling of one aspect of her alleged mental impairment. Accordingly, the following factual summary focuses primarily on the issue before the court.

Plaintiff was born in 1948. Doc #20, Administrative Record ("AR"), at 85. From 1980 to 1990, plaintiff worked as a cable splicer. AR 79. She received specialized training in splicing cables, using ladders, climbing and driving. AR 83. From 1990 to 2001, plaintiff also worked as a construction laborer, chore worker, caregiver, warehouse worker, food server, census taker, housekeeper and house sitter. AR 79-80, 107. Plaintiff claims to have become unable to work beginning on January 1, 2002 because she "could not hold anything in her hand and [] could not do [her] job duties." AR 79.

Plaintiff filed her application for DIB on July 30, 2004 giving an onset date of January 1, 2002. AR 54-116. She listed depression, carpal tunnel syndrome in the right hand, arthritis, bursitis of both shoulders and diabetes as conditions limiting her ability to work. AR 78.

Plaintiff's daily activities report described a daily routine of rising at 6:00 am, taking care of self care and household tasks, taking public transportation to classes at two

1  different community colleges until 5:00 or 6:00 pm four to five
2  days per week and returning home between 6:00 and 8:00 pm.  AR 96-
3  97.  She spent one afternoon per week babysitting her grandson and
4  spent weekends shopping for groceries, doing laundry, using the
5  computers at the public library and socializing with family
6  members.  AR 97-98.  Her hobbies were reading and swimming.  AR
7  101.  Plaintiff's son submitted a third party report largely
8  consistent with plaintiff's account in which he described plaintiff
9  as a full-time student with a 3.58 cumulative GPA who read "in high
10 volume" and largely functioned independently with regard to self-
11 care, household chores, and transportation and followed written and
12 spoken instructions "well."  AR 92.  He noted, however, a variety
13 of physical limitations such as lifting, squatting, stair-climbing
14 and using hands and wrote that "depression makes it hard for
15 [plaintiff] to understand and get along with others sometimes."  AR
16 93.

17         The SSA referred plaintiff for a physical examination. On
18 October 31, 2004, consulting examining physician Dr Jaskaran Momi,
19 MD, examined plaintiff.  Plaintiff brought no medical records to
20 the consultation.  Dr Momi's five-page report noted under
21 "impression" a history of diagnosis of hypertension but "normal
22 blood pressure today," hyperlipidemia on treatment with no known
23 complications, a history of pain in the shoulder joints "with
24 normal exam today," depression, symptoms controlled with
25 medications and diet controlled diabetes, "no known complications."
26 AR 161.  In his functional assessment, Dr Momi noted that there
27 were no limitations on sitting, standing or walking, on bending or
28 stooping, on lifting and carrying, on reaching, handling, feeling,

3

fingering or gripping and no environmental limitations. AR 162.

On December 14, 2004, the SSA denied plaintiff's application for DIB. AR 26-30. The denial letter noted that the SSA had asked plaintiff to undergo a consultative psychological examination but that plaintiff had failed to attend the exam or to respond to the "failure letter" that was mailed to her. AR 26. On February 7, 2005, plaintiff saw consulting examining psychologist Dr Sokley Khoi, PhD. AR 217-20. Plaintiff achieved average and high average scores on intelligence tests. Dr Khoi's report noted symptoms of depression based on plaintiff's self-report and her self-reported use of Zoloft. AR 219. Dr Khoi noted an Axis I diagnostic impression of "dysthymia vs depressive disorder, NOS" and, with regard to workplace restrictions, found no impairment in plaintiff's ability to follow simple or complex/detailed instructions, maintain adequate pace or persistence, to perform one- or two-step simple repetitive tasks or complex tasks or to adapt to changes in job routine. AR 219-20. Dr Khoi noted a "mild to moderate" limitation in plaintiff's ability to withstand the "stress of a routine work day" and a mild limitation in her ability to interact appropriately with co-workers, supervisors and the public on a regular basis. AR 220.

On March 8, 2005, agency psychiatrist Dr George Norbeck completed a Psychiatric Review Technique Form for plaintiff's case. AR 221-34. The fourteen-page Psychiatric Review Technique Form is designed to organize mental health information in a claimant's file so that it relates to the criteria for mental health impairments in the social security regulations, 20 CFR Part 404, Subpart P, App 1, ¶ 12.00. Dr Norbeck evaluated the findings relating to category

4

12.04 (affective disorders), and determined that the impairment was "not severe." AR 221. For depression to rise to the level of a listed impairment under paragraph 12.04, there must be medical documentation of persistent specified symptoms that result in functional limitations in two of four functional areas as follows: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The Psychiatric Review Technique Form offers a reviewing physician five degrees of limitation from which to choose —— none, mild, moderate, marked and extreme —— as well as a check-box for "insufficient evidence". In completing plaintiff's form, Dr Norbeck marked "none" in the first three functional areas and "insufficient evidence" in the fourth. AR 231.

The SSA again denied plaintiff's application for DIB. Plaintiff then requested a hearing before an ALJ giving as her reason for disagreeing with the SSA's determination: "I am convinced that one is not able to clearly determine a person's strength or capacities to sustain employment by a cursory physical exam, nor a memory skills exercise. My depression stems from my inability to leave my place of shelter." AR 37.

The ALJ held a hearing on May 25, 2006 at which plaintiff, her lawyer and vocational expert ("VE") Malcolm Brodzinsky were present. AR 409. Plaintiff testified that she was close to receiving her AA degree at a community college and had planned to become a land surveyor, explaining that it paid well, was outdoor work and was not too physically demanding. AR 415-19.

Plaintiff testified that she had moved from a full-time to part-time class schedule to concentrate on her more difficult courses. AR 418-19.  Plaintiff also described her employment history and testified that her patience and tolerance had diminished over time. AR 419-21.

The ALJ posed hypothetical questions to the VE to determine whether jobs existed in the national economy for a person with plaintiff's age and educational/vocational profile who had a mild limitation in interacting with others.  The first included a psychological limitation as follows: "no more than a rare interaction with the general public, no more than occasional contact with supervisors, and no more than occasional contact with co-workers."  AR 449.  The VE answered that such a person would be able to perform work as a construction laborer or chore worker as plaintiff had performed the work in her previous jobs.  AR 449.

The second hypothetical added a further psychological limitation that "the person cannot complete a full workday or work week without at least infrequent interruption from psychological based symptoms and cannot work on an inflexible schedule such as say, a counter worker at a fast food facility would have to work." Id.  The ALJ further clarified that on any day "there might be, maybe three or four interruptions that would last maybe only five minutes, but they would be at completely unpredictable, unplanned times."  Id at 450.  The VE responded that plaintiff's past work would not be possible with the additional limitation, but that a portion of existing jobs as an auto detailer or kitchen helper would likely be manageable.  Id.

\\

In the decision dated October 18, 2006, the ALJ found, applying the five-step sequential analysis at 20 CFR § 404.1520(a), that plaintiff: had not engaged in substantial gainful activity since the alleged onset date of her disability; suffered from "severe" impairments of obesity and depression, noting that the latter was controlled with medication and "borders on non-severe"; did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; possessed the residual functional capacity (RFC) to "lift and/or carry 50 pounds occasionally and 20 pounds frequently[;] stand and/or walk six hours in an eight-hour work day; sit for approximately six hours in an eight-hour workday; and have no more than rare interaction with the general public and no more than occasional contact with supervisors or co-workers." AR 16-19.

The ALJ summarized the consultative medical reports including that of Dr Khoi. He noted, however, that "[n]either we nor the claimant * * * found documentation of a mental health diagnosis from an acceptable medical source." AR 19. Accordingly, the ALJ found that plaintiff was able to perform her past work as a construction laborer or chore worker and denied her application for DIB. Id at 20. Because the ALJ found plaintiff able to perform her past work, he did not proceed to the fifth step of the five-step sequential evaluation under which he would have considered whether other work was available to plaintiff in the national economy. Had he done so, he would presumably have determined based on the VE's testimony that positions including auto detailer would be available to plaintiff.

**7**

The Appeals Council denied review of the ALJ decision making the decision final on March 30, 2007. Plaintiff timely filed for judicial review.

II

A district court may disturb a final decision by the SSA under 42 USC § 405(g) only if the decision is not supported by substantial evidence or is based on legal error. Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F3d at 1039. A decision of the ALJ will not be reversed for errors that are harmless. Burch v Barnhart, 400 F3d 676, 679 (9th Cir 2005).

III

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because "the ALJ failed to include the work stress limitations into any of the hypothetical questions posed to the vocational expert." Doc #21 at 5. The Ninth Circuit has held that the ALJ's decision is not based on substantial evidence if it rests on VE testimony and the ALJ's hypothetical question does not describe all of plaintiff's limitations. Gallant v Heckler, 753 F2d 1450, 1457 (9th Cir 1984). Defendant contends that the VE's focus on unskilled work adequately addressed plaintiff's alleged stress limitation and that the error, if any, was harmless. Doc #22 at 3.

8

The record abundantly supports the ALJ's conclusion that plaintiff was not disabled at any time during the period at issue. Plaintiff was highly functional as evidenced by her schedule of daily activities and there is no documentation of a mental limitation that even approaches that required for a disability finding. The ALJ's finding that plaintiff's depression was only marginally "severe" within the meaning of the social security regulations is entirely consistent with the record evidence.

The ALJ adequately explored plaintiff's alleged mental limitations with the VE. He did not use the precise phrase used by Dr Khoi —— "'mild to moderate' limitation in plaintiff's ability to withstand the stress of a routine work day" —— but he was not required to do so. Rather, he described the limitation as: "the person cannot complete a full workday or work week without at least infrequent interruption from psychological based symptoms and cannot work on an inflexible schedule such as say, a counter worker at a fast food facility would have to work." AR 449. This formulation is closer to the language of the regulations and of the Psychiatric Review Technique Form used by the SSA to evaluate alleged mental limitations. It appears, however, that the ALJ did not credit this limitation because he did not include it in his RFC as set forth in his decision. The ALJ's decision highlighted the lack of documentation for plaintiff's alleged depression and her many daily activities inconsistent with disability. The court agrees with defendant, moreover, that if the omission of the second psychological limitation were deemed to be error, it would be harmless because the ALJ fully developed the record with the VE in support of a step-five finding that plaintiff was not disabled even

with the mental limitation noted above.  Remand would therefore serve no purpose.

IV

Plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.  The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.


_____
VAUGHN R WALKER
United States District Chief Judge